Wyckoff v. Hulse.

JOHN H. WYCKOFF, appellant,

v.

MARY E. HULSE and others, respondents.

If a guardian of minors loans money to their mother on her promise
to charge such minors for their support and to give him the benefit
of such charges, and she afterwards refuses to make any charge against
them or to accept any compensation for their support, he is not entitled
to an allowance therefor in settling his account with them as guardian.

On appeals from decree of Monmouth orphans court.

*Mr. G. C. Beekman,* for appellant.

*Mr. C. Robbins,* for respondents.

THE ORDINARY.

The appeals in these causes bring before the court for
review, decrees of the orphans court of Monmouth county
upon the several accounts of the appellant as guardian
during the minority of the several respondents, who are chil-
dren of Charles Martin, deceased. The appellant claimed
allowance for certain payments for board &c. of the respond-
ents, as having been made by him for them to their mother.
They were disallowed by the court below. He claims the
allowance under the following circumstances: He became
the guardian of the children in 1869. There were then
in the hands of the administrator of their father's estate,
$2,496 due them for their distributive shares. The admin-
istrator also held their mother's share. The appellant, just
before he became guardian, sold to their mother a tract of
twenty-four and one-half acres of his farm in Monmouth
county, at $100 an acre, upon the understanding and agree-
ment with her, as he alleges, that she was to give him a
mortgage for the whole of the purchase-money, which was

to be paid off by her allowance for the support of the children of whose persons and estate he was to be appointed guardian.    The allowance for the board of the children was, as he testifies, to be two dollars a week for those who lived at home.    There were seven children.    Two of them at that time were over fourteen years of age.    The appellant conveyed the property to the widow, by deed, dated March 9th, 1869.    He was appointed guardian on the 12th of April following.    He took from her two mortgages on the property, both dated April 14th, 1869, one to himself individually, for $700 and interest, and the other to himself as "guardian of the minor children of Charles Martin, deceased," for $2,496, the exact amount, in the aggregate, of the children's shares of their father's estate, and it was the sum which he had received for them accordingly.    The mortgage for $700 he caused to be recorded before the other.    It was given to secure the repayment of that sum lent by him to the widow to assist her in building a house and barn &c. on the property, which was without any such improvements.    He also lent her $100 besides, to enable her, as he says, to get stock &c. for the place.    For this he took her note.    She occupied the property up to November, 1876, when the appellant, having sold it under foreclosure of his mortgage and bought it at the sheriff's sale, required her to deliver up possession to him.    He bought it at the sheriff's sale for $1,570 or thereabouts.    She paid him, during the whole time from the date of the purchase until she delivered up possession, only $57 on account of the debts due from her on the bond and mortgages and note. Though she supported some of the children during the whole time she lived on the property, she charged nothing for their support, nor for anything which she did for them.

No credit was given on the $2,496 bond of any money whatever on any account.    Of the before-mentioned $57, $50 were credited by the appellant on the note, and $7 on the bond for $700.    He professes to have had an account of the board &c., in a pass-book, which he kept for that pur-

pose and for that alone. When he took a decree for fore-
closure, it was entered for $978.42 as the amount due on
his mortgage for $700, which was decreed to be entitled to
priority over the other, and for $3,513.74 as the amount
due to him on the mortgage given to him as guardian. He
declares, indeed, that he did not, in fact, claim that more
than $1,600 was due on that mortgage, and that the error,
in taking a decree for a larger amount, was due to the cir-
cumstance that the member of the firm of solicitors by
whom the foreclosure suit was conducted for him, with
whom he left the papers for suit and to whom he commu-
nicated the fact that there were only $1,600 due, was pre-
vented by absence, on account of illness, from attending
to the suit, and the conduct of the suit devolved on his
partner, who knew nothing about the credit, and who, pre-
suming that the whole amount appearing to be due on the
face of the papers was in fact due, did not communicate
with the appellant until after the final decree had been
entered.

The widow swears that she made no agreement to pay
the mortgage by her charges against the children for sup-
port, and that she never charged nor intended to charge
them anything therefor, and that she never knew that any
charges were being made by the appellant against them on
that account. She is a person of no education.

The orphans court, while they disallowed the charges in
question, allowed for use and occupation of the property
while it was occupied by the widow and children. It is
quite clear that the appellant is not entitled to the allow-
ance which he claims, nor to anything on that account.
He, in fact, paid the widow nothing for the support of the
children. When their estate came to his hands, he appears,
by the papers, to have invested every dollar of it in a second
mortgage on the land he had previously sold her. He says,
indeed, that he did not intend that that mortgage should be
for more than $2,400, which he had agreed upon with the
widow as the price of the property, and that it was due to

the mistake of the scrivener that it was made for $2,496, and he alleges, also, that it was made to him in his capacity of guardian by like mistake. He disposed of the property of the children as follows : Part of it he invested in his own name, individually, and afterwards collected it and applied it to his own uses, and the rest he did not invest at all, but expended in the payment of his debts. He stands before the court claiming that it shall give him the benefit of charges which he has made against his wards for payment for their support, which he has never, in fact, made. If the widow had agreed with him that she would charge the children for their support, and so enable him to pay her debt to him, and she had disregarded the obligation and refused to make the charge, he could have no relief against the children.

If A. agrees with B., his creditor, that he will work for C., and charge him wages for his labor, which A. shall have in payment of his debt, B. is at liberty to agree, *bona fide*, to work for C. without wages, and A. has no cause of action, legal or equitable, against C., in respect to the work done.

In the case in hand, the appellant took the widow's bond and mortgage for the purchase-money of the land, trusting, as he says, to her charging her minor children for their support, and giving him the benefit of her charges, and she refused to make any charge, or to accept any compensation for their support. It is unnecessary to enter upon the consideration of the merits of the transaction in regard to the sale of the property, because they are not involved in this suit. The sale was to the widow, and the appellant alleges that he did not intend to take the mortgage for purchase-money for the children, or on account of their estate.

The decree of the orphans court will be affirmed, with costs.